**In re John H. WILLIAMSON, Debtor.**

**Bankruptcy No. 82C–01703.**

United States Bankruptcy Court,
D. Utah.

July 11, 1984.

Supplemental Opinion Aug. 10, 1984.

814

Joel R. Dangerfield of Roe, Fowler & Moxley, for Claude Hawk Corp.

Robert C. Miner of Thomas J. Klc and Associates, Inc., Salt Lake City, Utah, for mechanics' lienholders Maxfield Plumbing, Rite Cabinet, Inc., Jim Williams dba J.W. Electric, and James D. Featherstone dba J & J Tile Co.

Ronald C. Barker, Salt Lake City, Utah, for mechanics' lienholders Stringham Lumber Co. and V & H Enterprises.

Marcella L. Keck, Salt Lake City, Utah, for mechanic's lienholder Jeff Merchant dba Artistic Landscaping.

Bruce A. Maak of Rooker, Larsen, Kimball & Parr, Salt Lake City, Utah, for State Sav. and Loan Ass'n.

Sid Siverson pro se.

Alan D. Frandsen, Salt Lake City, Utah, for Parley White dba Parley White Realty.

Wendell P. Ables, Salt Lake City, Utah, for debtor, John H. Williamson.

Theodore E. Kanell of Hanson, Russon & Dunn, Salt Lake City, Utah, the trustee, on his own behalf.

## MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

### CASE SUMMARY

In this case, the court is called upon to determine the priority of certain liens and encumbrances against proceeds of the sale of property of the estate. The issue of priority turns upon four questions: (1) whether or not certain statutory mechanics' liens are valid and enforceable under Utah law and (2), if so, what distributive priority they may have in this case; (3) whether a recorded document constitutes an independent second trust deed with a separate and inferior priority standing of its own or whether it is, instead, a notice of the advance of additional funds secured by the first trust deed, made in favor of the lender and having a priority superior to all other liens and encumbrances; and (4) whether or not the debtor's claimed homestead exemption is valid and, if so, what priority it has in this case; or, in the alternative, whether the debtor is entitled to payment of a real estate commission as an administrative expense for his role as a listing agent in the sale of the property of the estate.

### FACTS, PROCEDURAL BACKGROUND, AND ARGUMENTS

On July 14, 1982, debtor John H. Williamson filed a petition for relief under Chapter 11 of the Bankruptcy Code. The case was converted to one under Chapter 7 on June 8, 1983.

On July 21, 1983, the Chapter 7 trustee, pursuant to Section 363(c) and (f) of the Code, noticed his intent to sell, free and clear of liens, the real property belonging to the estate. The trustee stated in his notice of this sale that the liens encumbering the property would be "transferred" to the sale proceeds.

On August 15, 1983, the court approved the sale of the property for $335,000.00. The sale was closed pursuant to the trustee's notice. On August 15, the court further ordered the following payments to be made from the sale proceeds:

(a) $200,000.00 to State Savings & Loan Association ("State Savings"), pursuant to its first trust deed recorded June 4, 1981;

(b) $10,050.00 to the real estate agency of Gump & Ayres as payment of its 3 percent sales commission;

(c) $3,500.00 in full payment of the outstanding real estate taxes due for 1981, 1982, and, as prorated, for 1983.

Pursuant to the court's order, the balance of the proceeds, $121,450.00, was to be held in trust, pending further determination of the priority of the remaining liens which, by virtue of the trustee's notice and the court's order, had attached to these proceeds.[1]

On August 29, 1983, the debtor was discharged.

On December 19, 1983, Claude Hawk Corporation ("Claude Hawk") moved this court for distribution of the remaining proceeds and for an order determining the distributive priority of the claims that have attached thereto, pursuant to the notice of the trustee and order of the court.[2]

---

1. Out of these proceeds there must yet be paid, if allowed, the closing costs of sale, the debtor's homestead exemption, the trustee's fees, as well as amounts to the holders of valid statutory mechanics' liens.

2. In its motion, Claude Hawk, a secured creditor, argued that the sale proceeds are subject to the following undisputed liens in the following order of priority:

(1) Real property taxes for 1981, 1982, and, as prorated, for 1983 in the sum of $3,500.00;

(2) The debt owed to State Savings and Loan Association, secured by a Deed of Trust recorded in Salt Lake County on June 4, 1981 as Entry No. 3571498 in the sum of $200,000.00;

(3) The debt owed to State Savings and Loan Association, evidenced by a document recorded in Salt Lake County on December 2, 1981 as Entry No. 3628145 in the sum of $45,000.00

In its motion, Claude Hawk contended that the following mechanics' lien notices, in the amounts shown, are invalid:

(1) Rite Cabinets, Inc. for $8,454.00

(2) Gunner Anderson for $3,500.00

(3) Sid Siverson dba S & S Construction for $5,800.00

(4) Jim Williams dba J.W. Electric for $2,414.00

(5) James D. Featherstone dba J & J Tile Co. for $6,800.00

(6) Jeff Merchant dba Artistic Landscaping for $3,346.00 (two lien notices)

(7) Fred Levin dba Fred's Glass Shop for $1,617.00

(8) Tom Williams dba Tom Williams Construction for $2,400.00

(9) Maxfield Plumbing, Inc. for $6,156.00

(10) Edward H. Poulsen dba AJAX Insulation for $720.25

(11) V & H Enterprises for $4,720.03

(12) Stringham Lumber Co. for $2,369.88

(13) Jerry D. Jackson of Rain Gutter and Aluminum Products for $463.65

(14) Earl J. Hemmert, Sr. dba Aire Flo Heating and Electric for $669.64

Claude Hawk admits that these liens, arising under Utah law, would ordinarily take priority over its own trust deed because each of them relates back in time to June 4, 1981, when the first work began on or the first materials were furnished to the subject property. However, Claude Hawk argues that, in this case, the lien notices are invalid for the following technical reasons: the first twelve (12) claimants filed notices containing fatally defective acknowledgments or certificates; claimant number thirteen (13) in the list filed his notice after the 100 day deadline established by controlling Utah law; and the last claimant in the list, number fourteen (14), filed a notice that does not contain an accurate description of the property against which the lien is charged.

The holders of these allegedly defective and invalid lien notices filed responses arguing, on the contrary, that any defects in these notices are *de minimus*, that the notices are in substantial compliance with Utah law, and that the claims of these mechanics' lienholders have priority over the claim of Claude Hawk because their liens relate back to June 4, 1981, a time before Claude Hawk's trust deed was recorded.

State Savings argues only that, regardless of the outcome of the priority battle between Claude Hawk and the mechanics, the priority standing of State Savings is superior to all other interest holders because both its original loan of $200,000.00 and its subsequent loan of $45,000.00 are secured by the first trust deed which holds top priority. State Savings denies the existence of any second trust deed and asserts that the second loan was an advance of additional funds secured by the first trust deed, pursuant to the provisions contained in the pertinent loan documents and as allowed by Utah law.

On January 19, 1984, a hearing was held before this court.[3] At this hearing, Claude

(reduced by $10,000.00 which was never paid out to the debtor);

(4) Allowable trustee's fees up to $3,350.00;

(5) The 3 percent real estate commission to Gump & Ayres in the sum of $10,050.00;

(6) The homestead exemption of John H. Williamson in the sum of $8,000.00;

(7) Costs of sale, closing costs, and costs of title insurance in an unknown sum.

(8) The secured debt owed to Claude Hawk Corporation evidenced by the trust deed recorded in Salt Lake County on December 2, 1981 as Entry No. 3628146 in the sum of $44,950.00 with interest at the annual rate of 15 percent from June 3, 1981, yielding $18.47 per day, plus costs of $182.80 and a reasonable attorney's fee of $2,384.50 (which debt Claude Hawk agreed to subordinate to the interests of State Savings).

3. Joel R. Dangerfield of the Salt Lake City firm of Roe, Fowler & Moxley appeared for Claude Hawk. Robert C. Miner of the Salt Lake City firm of Thomas J. Klc and Associates, Inc., appeared for mechanics' lienholders Maxfield Plumbing, Rite Cabinet, Inc., Jim Williams dba J.W. Electric, and James D. Featherstone dba J & J Tile Co. Ronald C. Barker of Salt Lake City appeared for mechanics' lienholders Stringham Lumber Co. and V & H Enterprises. Marcella L. Keck of Salt Lake City appeared for mechanic's lienholder Jeff Merchant dba Artistic Landscaping. Bruce A. Maak of the Salt Lake City firm of Rooker, Larsen, Kimball & Parr appeared for State Savings. Sid Siverson of Salt Lake City appeared *pro se.* Alan D. Frandsen of Salt Lake City appeared for Parley White dba

Hawk withdrew its objection to the mechanics' liens of Stringham Lumber Co. and V & H Enterprises and stated that the remaining judgment lien of Parley White, though technically valid, was recorded in Salt Lake County on May 6, 1982, after the Claude Hawk trust deed was recorded. The court also heard arguments on behalf of certain of the parties. Then, upon request of debtor's counsel, the debtor was granted leave to brief the issue of the validity and priority of debtor's homestead exemption and debtor's alternative claim for a real estate commission for the work performed as listing agent in the sale of the property of the estate. Other parties were granted leave to file opposing briefs. The court took all matters addressed at the hearing under advisement.

On January 31, 1984, pursuant to the leave of court, the debtor filed a motion for allowance of his homestead exemption or, in the alternative, for the allowance of his real estate commission as an administrative expense. The debtor argued that he filed his notice of homestead exemption on August 26, 1982 and waived his claim for real estate commission provided he would obtain that exemption. He also asserted that there was no objection to his exemption until the "final gasp of the oral argument" on January 19, 1984.

Claude Hawk filed its memorandum in opposition to the debtor's motion for the allowance of his homestead exemption, arguing that such exemption is inferior in priority to the lien of Claude Hawk and that the debtor is not entitled, in the alternative or otherwise, to any real estate commission for the sale of the property of the estate.

The debtor replied to the memorandum in opposition of Claude Hawk, arguing that Claude Hawk had knowledge of debtor's role as a listing agent and waived its objection to debtor's alternative claim for a real estate commission by failing to object thereto and that debtor, as a "disinterested person" within the context of Section 101(13) of the Code, is entitled to a *nunc pro tunc* order approving his professional services for which compensation should be paid as an administrative expense.

Stringham Lumber Co. and V & H Enterprises, creditors and mechanics' lienholders (to whose liens Claude Hawk withdrew its objection) filed their own objections to the allowance of the debtor's claim for homestead exemption, arguing that the debtor waived his claim for real estate commission, that his application for commission (made in the alternative) is not timely, and that the homestead exemption, under Utah law, is inferior to mechanics' liens securing sums owed for improvements on residential property.

## THE ISSUES

The issues to be resolved are:

(1) whether or not certain mechanics' liens, which now constitute liens on the proceeds of the sale of estate property, sold free and clear of liens pursuant to Section 363 of the Code, are valid and enforceable under Utah law, and

(2) if so, whether or not they have priority superior to the lien of Claude Hawk;

(3) whether or not the document of State Savings recorded in Salt Lake County on December 2, 1981 as Entry No. 3628145 in the sum of $45,000.00 (reduced by $10,-000.00 representing funds not advanced) constitutes an independent second trust deed with a separate priority standing inferior to the valid mechanics' liens or whether it is, instead, a notice of advance of additional funds secured by the first trust deed, made in favor of State Savings and having a priority standing superior to all other liens against the proceeds; and

(4) whether or not the debtor has a valid homestead exemption, and if so, what priority said exemption has under Utah law; or, in the alternative, whether or not the debtor is entitled to a real estate commission, to

Parley White Realty. Wendell P. Ables appeared for the debtor, John H. Williamson. Theodore E. Kanell of the Salt Lake City firm of Hanson, Russon & Dunn, the trustee, appeared on his own behalf.

be paid as an administrative expense, for the sale of the property of the estate.

## DECISION

### (1)

### The Validity of the Mechanics' Liens

On July 21, 1983, the trustee of this Chapter 7 case noticed, pursuant to Section 363(c) and (f) of the Code, a sale of certain real property of the estate, free and clear of liens.

■ Section 363(f) of the Code provides that:

The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate ...

It is clear from the Code that it was not the intent of Congress to allow a trustee, in selling property of the estate, to destroy the interests of creditors secured by said property. Section 363(e) of the Code provides that:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

In this case, no creditor moved the court for "adequate protection." This was undoubtedly due to the fact that the trustee, in his notice of intended sale, indicated that all liens against the subject real property, as to the extent such liens were valid, would be "transferred" to the proceeds of sale.[4]

On December 19, 1983, Claude Hawk, in its application for distribution of proceeds of the trustee's sale, objected to the validity and priority of the claims of 14 statutory lienholders. As a creditor claiming an interest in the property of the estate, Claude Hawk has the right to object to the validity of these other claims, pursuant to Section 502(a) of the Code, which provides, in pertinent part:

A claim or interest, proof of which is filed under Section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

"There is no doubt that the phrase 'parties in interest' applies to those who [like Claude Hawk in this case] have some interest in the assets of the debtor being administered in the case." COLLIER'S ON BANKRUPTCY, 15th ed., ¶ 501.01 at p. 502–12.

The question raised by Claude Hawk is which, if any, of these 14 liens is valid.[5]

■ The court finds that the trustee's notice of sale issued and the sale itself took place pursuant to court approval and upon the condition that all those holding valid statutory liens against the real property of the estate would, upon sale, continue to hold against the proceeds of sale lien rights equivalent to those extinguished by the trustee's sale. For this reason, the determination of the validity and priority of the various lien rights against the proceeds of the sale must be determined as if those rights had arisen under Utah law as statutory mechanics' liens [6] charged against the real property of the estate.

---

**4.** It is clear from the legislative history of the Code that what the trustee designated as a "transfer" of liens could constitute adequate protection of the lienholders' interests under Section 363(e). H.R. 95–595 p. 345, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6301. *See also, In the Matter of Circus Time, Inc.,* 5 B.R. 1 (Bkrtcy.Ct.Maine 1979); COLLIER'S ON BANKRUPTCY, 15th ed. ¶ 363.07.

**5.** The court is not called upon to determine whether the trustee's notice and sale of the subject property with court approval could oper-

ate to extinguish these statutory liens entirely and give to the former lienholders a totally new secured status in the proceeds of the sale. Nor is the court called upon to determine whether or not such new security interests would be entitled to the same priority standing they formerly had under state law.

**6.** The following explanation appears in COLLIER'S ON BANKRUPTCY, 15th ed., ¶ 101.28 at p. 101–67:

The definition of "lien" is new [in the 1978 Bankruptcy Code] and is intended to encom-

■ Article I, Section 8, of the United States Constitution provides that "Congress shall have power to establish uniform laws of bankruptcy" throughout the United States. Where Congress has not pre-empted applicable state law, that law governs. The determination of the validity and priority of statutory liens against the proceeds in this case must be made in light of the applicable Utah law governing the creation, validity, and effect of the mechanics' liens originally filed against the real property of the estate whose sale gave rise to the proceeds now charged with these same liens. *See, Butner v. United States,* 4 Bank.Ct. Dec. 1259 (1979).

Those controlling provisions of Utah law appear in the Utah Code Annotated Sections 38–1–1 et seq. and 57–2–1 et seq. (1953, as amended).

*(a) Technical Requirements of Mechanics' Liens in Utah*

Section 38–1–7 requires the individual executing a notice of claim of mechanic's lien to verify the contents of such a notice with an oath.[7]

Section 57–2–1 requires that every writing affecting real estate be acknowledged according to the provision of Utah Code Ann. Section 57–2–1 et seq. (1953) (Utah's version of the Uniform Acknowledgments Act).

The distinction between an oath and an acknowledgment is this:

■ *An oath* is an affirmation of the truth of a statement, which renders one willfully asserting an untruth punishable for perjury. In its strict sense the term refers to an attestation that is coupled with an invocation to the Supreme Being to witness the words of the attesting party and to visit him with judgment if the words be false. In its more general sense, the term oath includes any attestation or affirmation whereby a party signifies that he is bound in conscience to perform an act faithfully or speak truly, regardless whether or not that attestation invokes the Supreme Being or is accompanied by a conditional self-cursing. In Utah the term oath is used in its general sense to include the concept of an "affirmation." Utah Code Ann. Section 68–3–12(2) (1953); Rule 43(d) Utah Rules of Civil Procedure. Moreover, in Utah:

... the essentials of an oath are: 1. A solemn declaration. 2. Manifestation of intent to be bound by the statement. 3. Signature of the declarer. 4. Acknowledgment by an authorized person that the oath was taken.

*McKnight v. State Land Bd.,* 14 Utah 2d 726, 381 P.2d 726, at 734 (1963).

■ *An acknowledgment,* on the other hand, is a formal declaration which is attached to a written instrument. This declaration constitutes an oath or affirmation, but only to the effect that the person making the acknowledgment is the same as the person executing the instrument being acknowledged.

pass all three kinds of liens defined under the Code; judicial liens, security interests, and statutory liens. The word "lien" is defined as a charge against or interest in property to secure payment of a debt or performance of an obligation.... Although the existence and effect of liens are ordinarily to be determined by state law, state law should not be applied where its application would frustrate or debilitate federally enacted policy. *Di Pierro v. Cullen (In re Taddeo),* 4 C.B.C.2d 185 (B.Ct.,E.D.N.Y.), *aff'd,* 5 C.B.C.2d 1309 (E.D.N.Y.1981), *aff'd,* 685 F.2d 24, 6 C.B.C.2d 1201 (2d Cir. 1982).
Section 101(39) of the Code defines a statutory lien as follows:
... "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent

whether or not statutory, but does not include statutory interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest is made fully effective by statute.
In the words of the 2 COLLIER BANKRUPTCY MANUAL, 3rd ed., ¶ 545.01 at p. 545–1:
A statutory lien is one that arises automatically and is not based on an agreement to give a lien or on a judicial action. Mechanics', materialmen's, warehousemen's, and tax liens are examples [of statutory liens].

7. In *First Security Mortgage Co. v. Hansen,* 631 P.2d 919 (Utah 1981), the court held that a mechanic's lien was invalid because, though it was properly acknowledged, it was not verified by an oath as to the truth of its contents.

 *A certification,* also called the "jurat," constitutes the official verification that must accompany all valid oaths in Utah. By means of this verification, the official administering the acknowledgment certifies, pursuant to Utah Code.Ann. Section 57–2–6 (1953), that (1) the person signing that oath actually appeared before the official, and that (2) said person was either personally known by the official to be the signatory of the instrument or (3) that the acknowledging party was proved to the official to be the signatory by the oath or affirmation of a credible witness known personally to the official.

 Thus, in Utah, every valid notice of mechanic's lien must contain an oath verifying the truth of its contents, an oath acknowledging the identity of the person executing it, and an official certification verifying those oaths.

In this case, 12 of the 14 lien notices were identical in form. On the front side of these 12 notice forms appeared the legal language perfecting a valid mechanic's lien under Utah law. This language was interspersed with blanks to be filled in with the appropriate details required by the mechanic's lien statute (Utah Code Ann. Section 38–1–7 (1981)). On the reverse side of this notice appeared the following declaration which contained language that, apparently, was to serve (1) as the signatory's oath as to the contents of the notice, (2) the oath acknowledging the signature on the notice, and (3) the official verification:

STATE OF UTAH )
 :ss
COUNTY OF _____ )

_____ being first duly sworn, says that he is _____ claimant_ in the foregoing Notice of Lien; that he has read said notice and knows the contents thereof, and that the same is true of his own knowledge.

————————————————

Subscribed and sworn to before me this _____ day of _____, 19__. ·

————————————————
Notary Public

It will be necessary to analyze this declaration phrase by phrase:

(1) The purpose of the phrase "STATE OF UTAH, COUNTY OF _____:ss" is to indicate the venue in which the oath is made. The "ss" is a contraction of the Latin word "scilicet," which means "to wit." Neither the venue information or the "ss" is material to the document. *See, McCord & Nave Merchantile Co. v. Glen,* 6 Utah 139, 21 P. 500, at 501 (1889).

(2) Following this is the formal declaration containing the oath as to the contents of the notice and the acknowledgment of the signature. This declaration begins with a blank line in which is to be written the name of the person signing both the notice of lien and this declaration.

(3) Following the opening blank line is the phrase "being first duly sworn." In actual practice, an individual taking an oath before a notary does not normally raise his arm to the square and solemnly repeat the words of the oath as is done by a witness prior to testifying in court or at a deposition. Instead the usual practice is for the affiant (that is, the person desiring to be bound by an oath) to appear before the authorized official and sign the attestation, indicating that he is making the declaration upon his oath or affirmation.

(4) Following this language is the phrase "says that he is _____ claimant_ in the foregoing Notice of Lien." By these words, the person whose name appears in the opening blank attests, under oath, that he is the same person who signed the Notice of Lien. In the blank which appears in this phrase, this person may provide information setting forth his relationship to the lien claimant. Although Utah law does not require that this information be given, it is often helpful to establish the relationship between the lien claimant and the individual signing the lien notice and taking the required oaths, for very often it is a principal, agent, or employee of the claimant that signs the lien notice and appears before the official to sign the acknowledgment.

(5) Following this is the phrase "that he has read said notice and knows the con-

tents thereof, and that the same is true of his own knowledge." By this language the person signing the declaration attests that he, as the same person who signed the notice of lien, knows that the contents thereof are true.

(6) Following this is another blank line. This is for the signature of the person who signed the notice and whose name appears in the opening blank of the acknowledgment. This signature is a necessary element of both the oath attesting to the truth of the contents of the notice of lien and of the oath acknowledging the signature thereon. *McKnight v. Land Bd., supra.*

(7) Following this is the certificate or verification, also called a "jurat," of the official authorized to administer the acknowledgment. In most cases, this official is a notary public. In rare cases it may be a judge or clerk of the court, or some other public official. Utah Code Ann. Section 57–2–5 (1953). The essential parts of this certificate are set forth in Utah Code Ann. Section 46–1–8 (1953), which provides that:

> To all acknowledgments, oaths, affirmations and instruments of every kind taken and certified by a notary public he shall afix to his signature his official title and his place of residence, and the date on which his commission expires.

This court concludes that, in Utah, the essential parts of a notary's certificate constitute the essential parts of the certificate of any other official authorized to certify acknowledgments. Those essential parts are (1) the official's signature, (2) the official's title, (3) his place of residence (meaning the city or county and state in which he resides), and (4) the date his commission, as a notary or other authorization, expires. It will be necessary to analyze the elements of the jurat that appeared on the lien notices in this case:

(a) The first phrase of the jurat is "Subscribed and sworn to before me ..." The purpose of this language is to certify that the person making the foregoing acknowledgment did, in fact, appear before the official and did subscribe to the acknowledgment and oath in the declaration. In other words, it is to certify that the signatory voluntarily signed the declaration in the presence of the certifying official under penalty of perjury should his declaration prove to be false.

(b) Following this language in the jurat, is the phrase "this _____ day of _____, 19__." Into these blanks the official before whom the oaths are executed fills in the numerals and words setting forth the date on which the signatory appeared before the official and subscribed to the declaration. The court finds, in light of the provisions of Utah Code Ann. Section 46–1–8, that the date on which the certification was made does not constitute one of the essential parts of the certificate.

(c) Following this is a blank line for the signature of the official administering the oath. The court finds, in light of the provisions of Utah Code Ann. Section 46–1–8, that the official is not only required to afix his signature, but must also afix his official title (e.g., notary public, clerk of court, judge, etc.), his residence (city or county and state) and the expiration date of his commission to administer oaths.

*(b) Application of Utah Law to the Lien Notices in this Case.*

On ten lien notices in this case, the person whose name appeared in the opening blank of the acknowledgment failed to sign it. In *McKnight v. Land Bd., supra,* the court held that such a signature is a necessary element of an oath. In *Graff v. Boise Cascade Corp.,* 660 P.2d 721 (Utah 1983), the court held that the absence of the name appearing to identify the person verifying the claim and the absence of the signature of the person who purportedly swore, under oath, as to the veracity of the claim rendered the notice invalid.

Taken together, these cases clearly stand for the proposition that, in Utah, the signature of the person making a written oath is essential. Absent this signature, the oath and acknowledgment are void. Without the oath and the acknowledgment, the requirements of Utah Code Ann. Sections 38–1–7 and 57–2–2 (1953) are

not met; and the notice of lien is, therefore, invalid.

For these reasons, this court holds that the lien notices of the following ten (10) claimants are invalid for lack of this essential signature:

(1) Rite Cabinets, Inc. for $8,454.00

(2) Gunner Anderson for $3,500.00

(3) Sid Siverson dba S & S Construction for $5,800.00

(4) Jim Williams dba J.W. Electric for $2,414.00

(5) James D. Featherstone dba J & J Tile Co. for $6,800.00

(6) Jeff Merchant dba Artistic Landscaping for $3,346.00 (two lien notices)

(7) Fred Levin dba Fred's Glass Shop for $1,617.00

(8) Tom Williams dba Tom Williams Construction for $2,400.00

(9) Maxfield Plumbing, Inc. for $6,156.00 [8]

(10) Edward H. Poulsen dba AJAX Insulation for $720.25 [9]

■ In reaching this decision, the court is aware that Jeff Merchant dba Artistic Landscaping, recorded two notices of lien for the same claim, one on June 18, 1982, and another on June 29, 1982. Apparently, the second notice was intended to correct defects in the first. Unfortunately, both notices are invalid: the first, because the acknowledgment was not signed by Jeff Merchant; and the second, because the notary certificate is improper for failure to contain an essential element of the notary's certificate, namely, the expiration date of the notary's commission.

■ Although, in Utah, substantial compliance with these technicalities is sufficient to create validity, nevertheless, the absence of an essential element has been held by the Utah Supreme Court to render an otherwise valid lien notice technically defective. *See, Graff v. Boise Cascade, supra,* at 722–23.

■ If the signature of the claimant had appeared anywhere on the acknowledgment or if the notary had appended on the certificate his commission expiration date—regardless of its form, completeness, position or even accuracy—then there would have been a basis for finding substantial compliance with Utah law. But the complete absence of an essential element of an oath, acknowledgment, or jurat is, in Utah, fatal to the validity of the lien notice.

■ All the lien notices addressed so far, except for the second lien notice of Jeff Merchant, were completed, acknowledged, and notarized by the debtor, John H. Williamson. Because of this fact, these lien claimants argue that, whatever their defects, these notices should not be invalidated since any errors in them were the fault of the debtor and not of the claimants. This estoppel argument would be a persuasive defense against an attack made on these notices by the debtor, who could not be allowed to enjoy the fruits of his errors at the expense of those injured thereby. However, in this case, the lien notices are being attacked by another creditor, Claude Hawk, who, according to the record before the court, had nothing to do with creating the defective notices. As to him the lienholders' estoppel argument, although not designated as such, must fail.[10]

---

**8.** On this notice, the line reserved for the signature of the person making the acknowledgment was signed erroneously by the notary public. The oath, therefore, lacks a proper signatory and is, consequently, invalid, rendering the lien notice a nullity.

**9.** On this notice, the signature beneath the oath and acknowledgment is identical to that beneath the notary's certification. The court believes that these signatures are those of the notary and that, for this reason, the notice is invalid. However, even if these two signatures were those of Edward Poulsen, signing as lien

claimant and as notary, the result would be the same because, in Utah, a notary is disqualified from notarizing an instrument in which he is named as a party. *See,* Utah Code Ann. Section 46–1–10 (1953, as amended).

**10.** *See, Baggs v. Anderson,* 528 P.2d 141 (Utah 1974), where the court held that the new husband's statement that support money from the natural father was unwanted did not estop the mother of the children owed support or the children themselves from bringing an action against the natural father to recover the support money. *See also, Raymer v. H. Line Transport,*

■ The provisions of Utah's mechanic's lien statute require that a lien notice be filed within 80 days after the date the last material was furnished if the claimant is a subcontractor and 100 days after such date if the claimant is a general contractor. Utah Code Ann. Section 38–1–7 (1981). With regard to the notice of lien of Jerry D. Jackson of Rain Gutter and Aluminum Products, the court finds that the essential technical elements of the oath, acknowledgment and verification were met. However, the lien notice shows, on its face, that the last materials were furnished on February 25, 1982, and the notice was recorded on June 8, 1982. Counting February 26 as the first day and June 7 as the last, the court finds that this lien notice was filed 102 days after the last materials were furnished. Whether Jerry D. Jackson was a general contractor or a subcontractor is immaterial since this notice, filed after 102 days, is late under either provision of the statute. For these reasons, the court finds that this lien is invalid.

■ With regard to the lien notice of Aire Flo Heating and Electric ("Aire Flo"), the court finds no defect in the oath, the acknowledgment, or the notary's certificate. Claude Hawk claims, however, that the description of the property against which this lien is charged is inaccurate. This is true. The proper description for the debtor's property was

All of lot 6, Arlington Hills, Plat 'F', known by the address 575 Cambridge Circle, Salt Lake City, Utah.

The Aire Flo lien notice contains the following description:

Lot 6. Cambridge Circle or 575 Cambridge Drive, Salt Lake.

Utah law provides that the lien notice contain, *inter alia*,

... a description of the property to be charged with the lien, sufficient for identification ...

Utah Code Ann. Section 38–1–7 (1981). Had Aire Flo failed to put any property description on its notice of lien or had the description been clearly erroneous, the lien would have been defective. But here the property description is in substantial compliance with the statute. It is "sufficient for identification." It contains the identifying lot number, a reference to Cambridge Circle and Cambridge Drive, and a numerical address. Even if the description might create some confusion, it is sufficient to put all parties with interest in the correct parcel of property on notice of this claimant's lien. Moreover, the Salt Lake County recorder was able to record the document in spite of the minor and immaterial defect in the description. The court finds this lien notice to be in substantial compliance with the requirements of Utah Code Ann. Section 38–1–7 (1981).

■ With regard to the V & H Enterprises' lien, Mabel Stringham signed the notice for V & H Enterprises. Then, beneath that signature, the following declaration appears:

STATE OF UTAH )
:ss
COUNTY OF <u>SALT LAKE</u> )

<u>Mabel E. Stringham</u>, being duly sworn, deposes and says that (he) (she) is <u>Stringham Lumber Co.</u>, claimant in the foregoing Notice of Lien, that he has read said lien and knows the contents thereof, and that the same is true of his own knowledge.

/s/Mabel E. Stringham/s/

Subscribed and sworn before me this _____ day of _____, 1982.

[SEAL] <u>Dick L. Smith</u>
Notary Public, residing at Bountiful
My Commission Expires
08–18–84

The only defect in this notice occurs in the acknowledgment where Mabel Stringham wrote, in the second blank, the words

---

*Inc.*, 394 P.2d 383, 15 Utah 2d 427 (1964), where the court held that a letter, written by the insurer of the corporation's vehicle, mailed to the collision insurer of the other vehicle, and stating that the collision insurer's subrogation claim would be considered as soon as the personal injury claims were settled, would not estop the corporation from raising as a defense to the action brought by the collision insurer the rule against splitting a cause of action.

"Stringham Lumber" instead of "V & H Enterprises." The court has already concluded that, under the law of Utah, there is no essential requirement that the person taking the oath and making the acknowledgment state his, her, or its relationship to the claimant. The requirement is only that the claimant or the person signing on behalf of the claimant sign the notice and that the same signatory also take and sign the oath and acknowledgment. Here Mabel Stringham signed the notice for V & H Enterprises, and she took and signed the oath and acknowledgment as required. The notary's certificate is proper. The lien is, therefore, valid.

With regard to the Stringham Lumber Co.'s lien notice, Claude Hawk withdrew its objection thereto, which is just as well since this court was unable to find any defect in that notice.

The court also finds that Parley White has a valid judgment lien against the proceeds of the sale of the property of the estate.

(2)

## The Priority of the Mechanics' Liens

In light of the foregoing analysis of the validity of the various statutory mechanics' liens charged against the proceeds of the sale of real property of the estate, it is the court's conclusion that Claude Hawk has a security interest with priority over all the liens found herein to be invalid. The court bases this opinion on the provisions of Utah Code Ann. Section 57-3-2, -3 (1953, as amended), which provide that a holder of a recorded interest in real property will have priority over every subsequent interest, whether recorded or unrecorded, and such

holder will also have priority over every prior *unrecorded* interest of which said holder did not have *actual knowledge* ("actual knowledge" being inferred from the circumstances).

▇▇▇▇ Claude Hawk recorded its second trust deed on December 2, 1981, subsequent to the recording of these mechanics' liens, all of which relate back to June 4, 1981. In spite of this fact, Claude Hawk's lien has priority. This is because the lien rights of mechanics, which arise when the debt owed to them is incurred, are created by statute and must be preserved by the filing of a valid notice of lien within the time limits set by the law. The failure of certain of these lien claimants to properly perfect their liens with valid lien notices resulted in the expiration of their lien rights within 80 days for subcontractors and 100 days for general contractors.

▇▇▇▇▇ Because their lien rights expired, Claude Hawk's trust deed, which the court has examined and finds facially valid, has priority over all those liens whose notices the court has found to be invalid here. The court need not consider, in this case, whether or not Claude Hawk, as a subsequent recorder, had actual knowledge of the prior existence of the unrecorded (that is, unrecorded by virtue of their invalidity) interests of these lien claimants. These claimants should have perfected their rights, pursuant to Utah Code Ann. Section 38-1-7 (1953), long before the debtor filed his petition on July 14, 1982, which filing took place well over the 100 days after the last work was completed or last materials furnished on February 25, 1982.[11] Of

---

**11.** Had the time period for perfecting these mechanics' liens under state law extended beyond the date of the filing of the petition, then the lienholders could have had ten days in which to perfect their lien rights. COLLIER'S 15th ed. contains the following explanation of the pertinent provisions of the Code governing this procedure:

... The intervention of a petition under title 11 should *not cut off* an interest holder's opportunity to perfect where the interest holder could have perfected against an entity subsequently acquiring rights in the property if

bankruptcy had not intervened. There is no time limit other than as provided under non-bankruptcy law, and section 362(b)(3) provides an exception from the automatic stay to permit such perfection. The exception to this general rule is contained in section 547(e)(2)(C) which limits post-petition perfection in the context of the preference section to 10 days after the transfer takes effect between the parties.

Thus, under section 9–301(2) of the Uniform Commercial Code, perfection of a purchase money security interest within ten days

course, those few remaining valid mechanics' liens, whose dates of filing relate back to the date the first work was performed or the first materials furnished, will continue to have priority over the second trust deed of Claude Hawk, while the judgment lien of Parley White dba Parley White Realty, because it attached to the subject property after the time Claude Hawk perfected its lien, will continue to have a priority standing inferior to that of Claude Hawk.

### (3)

### The Trust Deed Issue

Having addressed the questions pertinent to the first two issues in this case,[12] the court now turns to the arguments of State Savings and Loan Association.

The issue raised by State Savings is whether or not a duly recorded document constitutes an independent second trust deed with a separate and inferior priority standing or whether it is, instead, a notice of advance of additional funds secured by State Savings' first trust deed which has superior priority to all other encumbrances against the proceeds of sale.

The first trust deed of State Savings is dated June 3, 1981 and was executed by John H. Williamson as trustor in favor of State Savings and Loan Association as trustee and beneficiary; it was recorded in Salt Lake County as Entry No. 3571498 on June 4, 1981, in Book 5255 at page number 1351. That trust deed contained the following language:

... Trustor CONVEYS AND WARRANTS TO TRUSTEE IN TRUST, WITH POWER OF SALE, the following described property, situated in *Salt Lake* County, State of Utah:

LOT 6, ARLINGTON HILLS SUBDIVISION PLAT "F", ACCORDING TO THE OFFICIAL PLAT THEREOF ON FILE AND ON RECORD IN THE SALT LAKE COUNTY RECORDER'S OFFICE.

Together with all buildings, fixtures, ...

FOR THE PURPOSE OF SECURING (1) payment of the indebtedness evidenced by a promissory note of even date herewith, in the principal sum of $200,000.00 made by Trustor, ... (2) the performance of each and every obligation, covenant, promise, and agreement of Trustor herein and in said note contained; (3) the payment of such additional loans or advances as hereafter may be made to Trustor or his successors in title or assigns, for any purpose, at any time before the cancellation of this Trust Deed, when evidenced by promissory note or notes or agreement reciting that they are secured by this Trust Deed provided that nothing herein contained shall be considered as limiting the amounts that shall be secured hereby when advanced to protect the security or in accordance with covenants in the Trust Deed; and (4) the payment of all sums expended or advanced by Beneficiary under or pursuant

---

of its making will relate back to defeat an intervening lien creditor whose rights arise during the period between the making of the security agreement and its perfection. In this situation, the trustee, as an intervening lien creditor, cannot avoid the purchase money security interest that is unperfected on the date the petition is filed, so long as the holder of the purchase money security interest later perfects within the prescribed ten-day period. The same analysis would also apply to the holder of mechanic's lien, if state law would permit perfection to relate back so as to defeat an intervening lien creditor.... For a discussion of the effect of Section 546(b) on a holder of mechanic's lien, *see In re Saberman,* [3 B.R. 316 (Bkrtcy.Ct.N.D.Ill.1980) ].

4 COLLIER ON BANKRUPTCY, 15th ed., ¶ 546.-03[2] at pp. 546–8 to 546–9. In this case, however, the lien rights of the mechanics expired prior to the filing of the petition by the debtor.

**12.** Claude Hawk's argument that the lienholders' failure to commence an action to foreclose their liens within 12 months, as required by Utah Code Ann. Section 38–1–5 (1981), is without merit for two reasons: first, the automatic stay prevented the lienholders from bringing such an action against the debtor or the estate; and, second, Section 108(c) of the Code tolls the time for the bringing of such an action until the later of (a) the end of such period of time or (b) 30 days after the stay is terminated pursuant to Section 362(c) and (d) of the Code. *See, In re Cruseturner,* 8 B.R. 581 (Bkrtcy.Ct.Utah 1981).

to the terms hereof, together with interest thereon as herein provided.

Moreover, an accompanying document, entitled "Additional Advance Note and Agreement" for $45,000.00 dated December 1981, and recorded on December 2, 1981, contained the following language:

FOR VALUE RECEIVED, the undersigned jointly and severally promise to pay to the order of STATE SAVINGS AND LOAN ASSOCIATION ... the sum of $45,000 ... and this agreement is hereby made a part of the original note and TRUST DEED representing said loan dated June 3, 1981, and recorded June 4, 1981, Book 5255 at page 1351 of the records of the County Recorder of SALT LAKE COUNTY, UTAH.

It is clear from these documents that it was the intent of the parties that State Savings advance an additional sum of $45,-000.00 to the debtor, which sum was to be secured by the first trust deed recorded June 4, 1981. It is also clear that the parties did not intend by these or any other documents to create a second trust deed in favor of State Savings for $45,000.00.

 In Utah the advance of additional funds secured by a previously executed and otherwise valid trust deed is allowed in circumstances where the note and trust deed contain clear language that the parties intend to avail themselves of this type of arrangement. *See, Bank of Ephraim v. Davis,* 559 P.2d 538 (Utah 1977).

 Here there is clear and unambiguous documentary evidence of this intent. For these reasons the court finds that the documents entitled "Additional Advance Note and Agreement," dated December 2, 1981, is a promissory note evidencing the advance of additional funds secured by State Savings' first trust deed.

### (4) The Homestead Exemption Issue

The final issue raised in this case is whether or not the debtor's claimed homestead exemption is valid and, if so, what priority it has. In the event the court denies debtor his homestead exemption, the court is asked, in the alternative, to determine whether the debtor is entitled to payment of a real estate commission as an administrative expense for his role as a listing agent in the sale of the property of the estate.

The Bankruptcy Code allows states to pre-empt federal exemptions. Section 522(b). Utah has acted to pre-empt the exemptions provided under applicable federal law. For this reason, Utah law governs in this case. *See, In re Neiheisel,* 32 B.R. 146 (Bkrtcy.Ct.D.Utah 1983).

In Utah, the homestead exemption is required by the Utah Constitution, Art. XXII, Section 1:

The Legislature shall provide by law, for the selection by each head of a family, an exemption of a homestead, which may consist of one or more parcels of lands, together with the appurtenances and improvements thereon of the value of at least fifteen hundred dollars, from sale or execution.

The Utah homestead exemption, enacted pursuant to this constitutional mandate, appears as part of the Utah Exemption Act of 1981, Utah Code Ann. Section 78–23–1 et seq. (1953). That act, in pertinent part, provides that:

(1) A homestead consisting of property in this state shall be exempt in an amount not exceeding $8000 in value for a head of family, $2000 in value for a spouse, and $500 in value for each other dependent ...

(2) A homestead shall be exempt from judicial lien and from levy, execution, or forced sale, except upon the following obligations:

(a) Statutory liens for taxes and assessments on the property;

(b) Security interests in the property and judicial liens for debts created for the purchase price of such property; and

(c) Judicial liens obtained on debts created by failure to provide support or maintenance for dependent children.

Utah Code Ann. Section 78–23–3 (1981).

In this case, the debtor is claiming a homestead exemption of $8,000.00. That

exemption must be paid to him out of the proceeds of the sale of the property of the estate, and it must be paid to him prior to the satisfaction of any judicial lien, levy, execution, or forced sale, but with certain exceptions listed in Utah Code Ann. Section 78–23–3(2)(a)–(c) (1953). Three of these exceptions do not apply in this case: (1) statutory liens for taxes, (2) statutory liens for assessments, and (3) judicial liens obtained on debts created by failure to provide support or maintenance for dependent children.

There are two exceptions to the homestead exemption that may apply in this case: (1) security interests and (2) judicial liens for debts created for the purchase price of property.

Here, the subject property is encumbered by (1) the first trust deed of State Savings, (2) the valid statutory mechanics' liens of Stringham Lumber Co., V & H Enterprises, and Aire Flo Heating and Electric, (3) the second trust deed of Claude Hawk and (4) the judicial lien of Parley White dba Parley White Realty. The question is which, if any, of these encumbrances constitutes an exception to the debtor's homestead exemption by virtue of being either a security interest or a judicial lien for a debt created for the purchase price of the property. Upon the answer to this question turns the court's determination of which, if any, of these claimants are to be paid from the proceeds of the sale before the debtor is paid his $8,000.00 homestead exemption.

Since the controlling provisions of Utah law were enacted in 1981, no case interpreting the pertinent parts of the homestead exemption provisions has been handed down. Thus, it befalls this court to interpret the provisions of Utah Code Ann. Section 78–23–3(2)(b) (1981). In doing so, the court is not without guidance. In their analysis of the Utah homestead exemption, the editors of *Summary of Utah Real Property Law,* state the following:

> By virtue of his homestead right, a judgment debtor is not excused from execution against homestead property to satisfy debts by lawful mortgage on the premises or debts created for the purchase price of the premises.

1 SUMMARY OF UTAH REAL PROPERTY LAW (J. Reuben Clark Law School: Brigham Young University, 1978) p. 201.

The editors rely for this conclusion upon the case of *McMurdie v. Chugg,* 99 Utah 403, 107 P.2d 163 (1940). That case is, obviously, not interpreting the current homestead law of Utah; however, its holding, that vendor's liens on property in the amount of the unpaid purchase price thereof cannot be defeated by a later arising claim of a homestead exemption, is instructive.

It appears that this policy was preserved in the 1981 Utah Exemption Act, where the legislature created, as an exception to the homestead exemption:

> Security interests in the property and judicial liens for debts created for the purchase price of such property.

Utah Code Ann. Section 78–23–3(2)(b) (1981).

This provision denominates two exceptions: the first is "security interests," and the second is "judicial liens for debts created for the purchase price of such property." It is the opinion of this court that the phrase "for the debts created for the purchase price of such property" found in this section modifies the term "judicial liens" *only;* it does not modify the term "security interests." This court concludes that the term "security interests," in this provision of the Utah Exemption Act, includes, but is not limited to, security interests for the purchase price of the property to which the security interest attaches. For the term "security interest" was meant to embrace any consensual security interest in the property by which the owner of said property voluntarily pledges that property as security for a debt regardless of the purpose of the debt. This interpretation is necessary in order to protect creditors who obtain from debtors, by means of consensual security agreements, liens upon the debtor's property. In view of the consensual nature of these security agreements, a creditor's lien rights arising there-

on should not be defeated by the debtor's claim of a homestead exemption. The same protection is not warranted to creditors holding lien rights against the debtor's property that do not arise upon the voluntary acquiescence of the debtor who agrees to pledge his property as security in order to obtain a loan, but, rather, arise under a statute (as in the case of the mechanics' liens in this case) or as a result of a judicial action.

In view of this opinion, the court concludes that the first trust deed of State Savings and the second trust deed of Claude Hawk are "security interests" within the meaning of Utah Code Ann. Section 78–23–3(2)(b) (1953) which cannot be defeated by debtor's claim for homestead exemption.

■ The court further concludes that the valid statutory mechanics' liens charged against the sale proceeds do not constitute "security interests" within the meaning of these provisions because there is no evidence before the court that these liens arose under contracts, rather these lien rights arose under statute and are not consensual. Moreover, the term "statutory lien," though defined in Utah's Exemption Act of 1981 (Utah Code Ann. Section 78–23–1 et seq. (1953)), is not applied in the subsections dealing with exceptions to the homestead exemption—an omission by the Utah legislature that clearly evidences an intent not to include "statutory liens," such as mechanic's liens, in the list of exceptions. Since these mechanic's liens are not "security interests' because they are not consensual and since they are not "judicial liens for debts created for the purchase price of such property" because they arose under a statute and not as a result of a judicial action, they are not valid exceptions to the homestead exemption. Consequently, the debtor's homestead exemption must

be paid before any proceeds are distributed to the valid mechanics' lienholders in this case.[13]

■ The court finds that the judicial lien of Parley White dba Parley White Realty which, according to the debtor's schedules, arose upon a judgment entered in the Utah District Court in and for Salt Lake County in the sum of $14,860.00 on May 5, 1982, is not a "security interest" for the reason that it did not arise by consent of the debtor. There is no evidence in the record that this judicial lien is for a debt created for the purchase price of the property. The court, therefore, finds that the lien of Parley dba Parley White Realty is not an exception to the debtor's homestead exemption.

As a result, the debtor's homestead exemption must be satisfied from the sale proceeds before all other liens and encumbrances with the exception of the first trust deed of State Savings and the second trust deed of Claude Hawk.

In view of the decision that this debtor is entitled to his homestead exemption, it will not be necessary to address the issue of his alternative claim to a real estate commission as an administrative expense.

## CONCLUSION

The court finds that the notice of sale by the bankruptcy trustee together with the court's approval of that sale operated to extinguish the original liens upon the real property of the estate and to create for each holder of a valid statutory or judicial lien or valid security interest a new secured position, which was in all pertinent respects equivalent to the original, against the proceeds of sale.

Furthermore, in applying the appropriate provisions of Utah law, this court concludes that the complete absence of an essential

13. *See, Volker-Scowcroft Lumber Co. v. Vance,* 32 Utah 74, 88 P. 896 (1907) where the Utah Supreme Court invalidated as unconstitutional a statutory provision that made homestead exemptions subject to mechanic's liens on grounds that such liens were nonconsensual. Whether or not the debtor's homestead exemption would

have defeated the claims of these mechanics' lienholders if they had, by means of foreclosure actions, reduced their lien claims to judgments and claimed that such judgments constituted judicial liens for the purchase price of the property, is not an argument before the court.

element of the oath, the acknowledgment, or the certificate required on a mechanic's lien notice will render that notice invalid. In this case 12 notices of lien were invalidated because of the absence of one or more of these essential elements. The court also concludes that the lien rights of these claimants, recording invalid notices of lien, expired under Utah law within 80 days for a subcontractor and 100 days for a general contractor after the last work was completed or the last materials furnished to the subject property. Consequently, the valid recorded second trust deed of Claude Hawk has priority over these invalid liens (regardless whether or not Claude Hawk had "actual knowledge" of their prior existence) because they expired due to lack of perfection by proper notice. Only those mechanics recording valid notices of lien continue to hold claims with priority over that of Claude Hawk.

Moreover, the first trust deed of State Savings is found to secure not only the original note for $200,000.00 but the additional advance of $45,000.00 (less $10,000.00 in loan funds never paid out to the debtor).

Finally, the debtor is found to have a valid homestead exemption, perfected by recordation on August 26, 1981, and that said homestead exemption will defeat the interests of claimants holding valid mechanics' liens as well as claimants holding judicial liens not incurred for debts created for the purchase price of the subject property; consequently, debtor's homestead exemption is subject only to the security interests of State Savings and Claude Hawk.

An order consistent with this memorandum opinion will enter.

### CASE SUMMARY

This matter came before the Court on January 19, 1984, on the application of Claude Hawk Corporation for distribution of the proceeds remaining after the previously authorized distribution of proceeds of the trustee's sale of the debtor's real property located at 575 Cambridge Circle, Salt Lake City, Utah, and for an order determining the distributive priority of claims to the sales proceeds.

The Court, being fully advised in the premises and having fully considered the motions, memoranda, arguments, and submissions of the parties, issued, on July 11, 1984, its Memorandum Opinion (Amended). This July 11 Memorandum constituted its findings of fact and conclusions of law in this matter and provided that an order consistent therewith be prepared, under local rules, by counsel for the prevailing party. In due course, an order was prepared by Claude Hawk's attorney, Joel R. Dangerfield. On July 19, 1984, an objection thereto was filed by debtor's attorney, Wendell P. Ables. The Court has read the proposed order as well as the objection and the counter-proposal of the debtor. The Court being duly advised, now issues this Supplemental Memorandum Opinion and Order for the benefit of the parties hereto and their attorneys.

### SUPPLEMENTAL MEMORANDUM OPINION

On the basis of the analysis set forth in its Memorandum Opinion of July 11, 1984, this Court concludes that, under Utah's race-notice statute [Section 57–3–2, –3 Utah Code Ann. (Pocket Supp.1983)], the following valid encumbrances in the following order of priority originally attached to the property at 575 Cambridge Circle, Salt Lake City, Utah:

(1) The first trust deed of State Savings;

(2) The statutory mechanics' liens of V & H Enterprises, Stringham Lumber Co., and Aire Flo Heating;

(3) The second trust deed of Claude Hawk Corp.; and

(4) The judicial lien of Parley White Realty.

However, by mandate of the Utah Constitution, Art. XXII, Section 1 and the Utah Exemption Act [Section 78–23–1, et seq. Utah Code Ann. (Pocket Supp.1983)] a homestead exemption, regardless of when it is claimed or recorded, takes priority over all other liens and encumbrances bur-

dening the subject property with the exception of those encumbrances listed in Section 78–23–3(2)(a)–(c) Utah Code Ann. (Pocket Supp.1983). By virtue of Utah's exemption statute, debtor's homestead exemption takes priority over all the other encumbrances except the consensual security interests in the property which the debtor conveyed to State Savings and Loan Association and to Claude Hawk Corporation.

The net effect of Utah's homestead exemption law is to re-order the priorities of the encumbrances upon the subject property, as follows:

(1) The first trust deed of State Savings;

(2) The second trust deed of Claude Hawk;

(3) The debtor's homestead exemption;

(4) The valid mechanics' liens of V & H Enterprises, Stringham Lumber, and Aire Flo Heating; and

(5) The judicial lien of Parley White Realty.

The priorities established by Utah's race-notice statute [Section 57–3–2, –3 Utah Code Ann. (Pocket Supp.1983)] and Utah's mechanic's lien law [Section 38–1–7 Utah Code Ann. (Pocket Supp.1983)], are superceded by the constitutional and statutory requirements of Utah's homestead exemption law [Section 78–23–1 et seq. Utah Code Ann. (Pocket Supp.1983)]. Whatever the original priorities may have been, a claim of homestead take precedence over them all, with those exceptions mentioned. What the Court requires in this case is that debtor's homestead exemption allowance of $8,000.00 be paid before all other liens and encumbrances, except the security interests of State Savings and Claude Hawk.

The Court does not speculate upon what final distributive prioritization would have resulted had the holders of the valid mechanic's liens reduced their claims to judgments.

## ORDER

For the reasons set forth in this Court's Memorandum Opinion of July 11, 1984 and in this Supplemental Memorandum Opinion, it is hereby

ORDERED that the debtor be, and hereby is, determined to have a valid homestead exemption, perfected by recordation on August 26, 1981, that said homestead exemption will take priority over and defeat the interest of the below named claimants holding valid mechanic's liens, as well as claimants holding judicial liens not incurred for debts created for the purchase price of the subject property, and that the debtor's homestead exemption is subject only to the security interests of State Savings and Loan Association and Claude Hawk Corporation and is subordinate in priority to such security interests; and it is further

ORDERED that Theodore E. Kanell, trustee, upon the expiration of 10 days following the entry of this order, be, and he hereby is, directed forthwith to make distribution of the balance of the proceeds of the August 15, 1983 trustee's sale of the debtor's real property, in the approximate amount of $121,450.00, plus any interest earned thereon, and after payment of any unpaid costs of sale, closing costs, real estate taxes, and allowable trustee's fees, in the priority, subject to the foregoing paragraph, and amounts as follows:

1. The secured debt owed to State Savings and Loan Association, evidenced by the deed of trust recorded in Salt Lake County on December 2, 1981, as Entry No. 3628145 in the sum of $45,000.00, which relates back, for purposes of priority, to the State Savings and Loan first deed of trust dated June 4, 1981, and recorded as Entry No. 3571498 (reduced by $10,000.00 which was never paid out to the debtor), plus any allowed interest, costs, and attorney's fees pursuant to 11 U.S.C. Section 506(b).

2. The secured debt owed to Claude Hawk Corporation evidenced by the trust deed recorded in Salt Lake County on December 2, 1981, as Entry No. 3628146 in the sum of $44,950.00 with interest at the annual rate of 15 percent from June 3, 1981, yielding $18.47 per day, plus costs, a reasonable attorney's fee pursuant to 11

U.S.C. Section 506(b) (which debt Claude Hawk agreed to subordinate to the interest of State Savings).

3. The homestead exemption allowance pursuant to Section 78–23–1 et seq. Utah Code Ann. (Pocket Supp.1983) in the amount of $8,000.00 to John H. Williamson.

4. The mechanic's lien filed by V & H Enterprises, recorded May 12, 1982, as Entry No. 3764554 in the amount of $4,720.09; the mechanic's lien filed by Stringham Lumber Co., recorded May 12, 1982, as Entry No. 3674555 in the amount of $2,469.88; and the mechanic's lien filed by Aire Flo Heating & Electric and Earl J. Hamert, as Entry No. 3687115 in the amount of $669.64—all three of which liens relate back to June 4, 1981, when the first work began on or the first materials were furnished to the subject property.

5. The judgment lien filed by Parley White dba Parley White Realty in a judgment against the debtor, filed May 6, 1982, Case No. C–81–8096 in the District Court of Salt Lake County Clerk's Office in the sum of $14,860.00.