ANTONE PETERSON *v.* F. A. HORNBLOWER, ADMIN-
ISTRATOR OF THE ESTATE OF HENRY MILLER, DECEASED,
AND CATHARINE MILLER.

MORTGAGE AND SALE OF HOMESTEAD UNDER THE ACT OF 1851.—The Homestead Act of 1851, providing that "the homestead * * * shall not be subject to forced sale on execution, or any other final process from a Court," etc., and that "such exemption shall not extend to any mechanic's, laborer's, or vendor's lien, or to any mortgage lawfully obtained," did not limit said exemption to

mortgages for the purchase money, but comprehended all that the parties might, in the mode pointed out in the Act, execute for any purpose.

MORTGAGE OF HOMESTEAD UNDER THE ACT OF 1860. — Under the amendatory Homestead Act of 1860, a homestead could only be acquired or abandoned by the written declaration of the parties, and no mortgage thereof, to secure a loan or indebtedness, was valid, except to secure the purchase money, and then, if the mortgagor were married and the wife resided in this State, not unless the mortgage was executed and acknowledged by her.

IDEM.—In the clause of section two of the Act of 1862, which provides that "no alienation, sale, conveyance, mortgage, or other lien of or upon the homestead property, shall be valid or effectual for any purpose whatever, unless the same shall be executed by the owner thereof, and be executed and acknowledged by the wife," etc., the words "mortgage or other lien," are descriptive of all other mortgages and liens than those enumerated in said first clause, and conserved and confirmed the right of voluntarily alienating or incumbering the homestead by a compliance with the requirements contained in the Act, as to the mode of its accomplishment.

MORTGAGE OF HOMESTEAD. — The husband and wife are not restrained by the Homestead Act of 1862 from mortgaging or otherwise charging the homestead to secure the payment of a loan ; nor is a sale of the same, in pursuance of an express power contained in the mortgage thereof, or a judgment of foreclosure, prohibited ; nor is a voluntary alienation of the homestead by the husband and wife, prohibited.

FORCED SALE.—The phrase "forced sale," as used in the eleventh Article, section fifteen, of the Constitution, which provides that "the Legislature shall protect by law from forced sale, a certain portion of the homestead and other property of all heads of families," and where used in the several statutes, passed in pursuance of this constitutional requirement, is not synonymous with "sale on execution," etc., but means a sale against the will of the owner, and does not apply where the owner consents directly to the sale, or does so indirectly by consenting to or doing those acts or things that necessarily or usually eventuate in a sale, as, instance—a sale under a power contained in a mortgage or a decree of foreclosure.

DEFECTIVE PLEADING ON APPEAL.—The objection that the complaint is defective, because it is not alleged that plaintiff's claim was presented to the administrator for allowance, cannot be taken for the first time in this Court.

CITED AS AUTHORITY.—*Coleman* v. *Woodworth*, 28 Cal. 567.

APPEAL from the District Court, Eleventh Judicial District, El Dorado County.

This was an action to foreclose a mortgage. The facts are stated in the findings of the District Court. The defendants had judgment in the Court below. The following were the findings of fact of the District Court, to wit :

· " This cause having been submitted to the Court on the evidence, the Court makes the following findings :

" 1st. That on the 5th day of April, A. D. 1865, Henry Miller executed to plaintiff his promissory note for and to secure the payment of a loan payable one year after date, for the sum of two thousand dollars.   That at the same time of the execution of the note, the said Miller and his wife, the defendant, Catharine Miller, made, executed, and delivered to plaintiff their mortgage deed to secure the payment of a loan, of the certain real estate described in the complaint. That the mortgage was properly acknowledged and executed in every respect.

" 2d. That said note was due and payable at the time of the commencement of the action, and there was due to plaintiff the sum of two thousand and sixty dollars in American gold coin.

" 3d. That on the ——— day of ———, 1865, said Henry Miller died, and thereafter, on the ——— day of ———, 1865, the defendant, Hornblower, was duly appointed by the Probate Court of El Dorado County, administrator of the estate of said Henry Miller, and was administrator at the commencement of the action.

" 4th. That on the 22d day of April, 1861, the said Henry Miller made and executed a declaration of homestead upon the property described in the complaint.   That said declaration was filed and recorded in the Recorder's office of El Dorado County on the same day.   That at the time of making said declaration, the said Henry Miller and his wife, the defendant, Catharine Miller, were residing upon said property, and that said property has never at any time exceeded in value the sum of four thousand dollars.

" As conclusions of law the Court finds that the declaration of homestead being upon the property at the time the mortgage was executed, that said mortgage was not valid for any purpose, and that defendant, Catharine Miller, is entitled to judgment refusing a decree of foreclosure."

Judgment was rendered accordingly. The plaintiff appealed upon the judgment roll, and made the following assignment of errors :

" The Court erred in finding that the declaration of homestead being upon the property at the time of the execution of the mortgage, that the mortgage did not become a lien on it. The Court erred in refusing the prayer of plaintiff for relief, in dismissing the bill, and in rendering judgment in favor of defendant, Miller."

*S. & George E. Williams*, for Appellant.

The only questions involved in this case are : 1st. The construction of the second section of the Homestead Act. 2d. If the construction of the District Judge is correct, then as to the constitutionality of that section of the Act.

By the statute of 1860, page 311, the Homestead Act was very materially amended. The first section provided for a new manner of claiming homesteads by doing away with the uncertainty of oral testimony, and requiring a declaration to be filed in the Recorder's office. The second section provided as follows : " Such exemption shall not extend to any mechanic's, laborer's, or vendor's lien, lawfully obtained, but no mortgage or alienation of any kind, made for the purpose of securing a loan or indebtedness upon the homestead property shall be valid for any purpose whatsoever."

Under the Act of 1860, there can be no doubt that the Legislature intended to render null and void all mortgages executed as in this case. This object was attained only in the language above quoted, and in no other part of the Act. The Legislature of 1862 amended the second section, leaving out all that portion prohibiting the giving of a mortgage to secure a loan. In amending this section, (Statutes 1862, p. 519,) it is true that the Legislature did not express its intention as plainly as it could have been done ; but, nevertheless, taken in connection with what the statute was, and

the express language upon that point, which was left out by the amendment, there does not seem to be any ground upon which to base two opinions in regard to the validity of the mortgage in this case.

If, however, the Court should differ with us as to the construction of this section, the question then arises, is not the Act in violation of section one, Article one, of the Constitution. The first section of the Homestead Act vests the title, upon the filing of the declaration, jointly in the husband and wife. But, if they have no power to mortgage, then they cannot sell, and they must remain the owners of the property until the death of one vests the title in the other, or until the wife voluntarily abandons the property by filing the declaration of abandonment. This, certainly, cannot be considered otherwise than as a prohibition upon that free use and disposition of property which the Constitution guarantees to all.

*Blanchard & Irwin,* for Respondents.

As the law stood under the Homestead Act of 1860, no sale, alienation, conveyance, or mortgage could be made of the homestead property, without first executing, acknowledging, and recording a declaration of abandonment, except a mortgage to *secure the purchase money,* or an alienation to pay the purchase money. The effect of this was to compel parties desirous of selling their homestead to first incur the unnecessary expense and trouble of executing and recording an abandonment before they could make a legal sale of the property ; and hence, for the purpose of obviating that difficulty, the Legislature of 1862 amended the second section of the Act of 1860, (Stats. 1862, p. 519 ;) which amendment, although expressed in different language, still substantially retains the prohibitions of the statute of 1860 in regard to mortgages, and confining them to the purchase money.

The language of section two of the Act of 1862 is : " Such exemption shall not extend to any mechanic's, laborer's, or vendor's lien, lawfully obtained, nor to any mortgage or

other lien lawfully taken or acquired *to secure. the purchase money for said homestead.*" It proceeds to point out the manner in which not only such mortgage or lien, but all other alienations, sales, or conveyances of the homestead, shall be executed; and then, to remedy the Act of 1860, by providing that alienations, sales, conveyances, mortgages, and liens may be executed without first executing the declaration of abandonment; and this latter was the only particular in which the Legislature of 1862 intended to or did amend the second section of the Act of 1860, leaving in full force the prohibition upon mortgaging the homestead for any other purpose than for the purchase money, contained in the Act of 1860. And this, too, upon the principle of *expressio unius est exclusio alterius,* for the language of section one is, that " the homestead  *  *  *  shall not be subject to forced sale on *execution* or any *final process from any Court* for any debt or liability contracted," etc.

In section two it is expressed that " such exemption shall not extend to any mechanic's, laborer's, or vendor's lien lawfully obtained, nor to any mortgage or other lien lawfully taken or acquired to *secure the purchase money* for said homestead," which upon the principle above quoted *excludes* all other mortgages, or mortgages given to secure the payment of any other kind of indebtedness.

The Act is not in violation of the Constitution, but was enacted in strict compliance with the requirements of that instrument. Article two, section fifteen, of the Constitution, says : " The Legislature shall protect by law *from forced sale* a certain portion of the homestead and other property of all heads of families." A foreclosure sale is a *forced sale* under the meaning of the law, as much so as any sale under execution.

The object the Legislature framing the present homestead law had in view, was to secure to heads of families and their minor children the homestead property as an immunity, and which never should by the act or permission of the husband and wife, or either of them, be sold by *process of law.* This

beneficent intention would be wholly defeated if the husband and wife could mortgage it for the purpose of business or speculation, by which the homestead property might become frittered away and wholly lost to the family.

By the Court, RHODES, J.:

Henry Miller, and Catharine, his wife, on the 5th of April, 1865, executed to the plaintiff a mortgage of certain real estate, to secure the payment of a promissory note given by Miller to the plaintiff for a sum of money loaned by the plaintiff to Miller. In 1861 Miller made a declaration of homestead upon the premises that were subsequently mortgaged to the plaintiff. The only question is whether, under the provisions of the Homestead Act of this State, the mortgage is void.

The first section of the Homestead Act of 1851 provided that "the homestead * * * shall not be subject to forced sale on execution, or on any other final process from a Court," etc.; and the third section, providing that "such exemption shall not extend to any mechanic's, laborer's, or vendor's lien, or to any mortgage lawfully obtained," is not limited to mortgages for the purchase money, but comprehends all that the parties may execute for any purpose. The section proceeds to declare how such mortgages (as well as sales and other alienations) shall be executed—that is to say, if the owner is a married man, and his wife is a resident of this State, she also must execute and acknowledge the mortgage, unless it be a mortgage to secure the purchase money, in which case her signature is unnecessary. No provision is made in this Act for a written declaration of abandonment of homestead.

Several changes in the system were wrought by the Act of 1860. (Stats. 1860, p. 311.) Section one provides that the homestead to be selected by the husband and wife, or either of them, or other head of a family, shall not be subject to

forced sale on execution or other final process; and provides for the selection of the homestead by a declaration in writing, and then declares that the husband and wife shall hold the same as tenants in common. It is provided by section two that " such exemption shall not extend to any mechanic's, laborer's or vendor's lien, lawfully obtained, but no mortgage or alienation of any kind, made for the purpose of securing a loan or indebtedness upon the homestead property, shall be valid for any purpose whatever, provided that a mortgage or alienation to secure the purchase money shall be valid if the signature of the wife be obtained to the same and acknowledged by her separately and apart from her husband." Following this is a provision for the abandonment of the homestead by a declaration in writing, and the further provision that the signature of the wife, who is a non-resident of the State, is not essential to the validity of a mortgage or alienation of the homestead before it has become the homestead. It thus appears that under the Act of 1860 the homestead must be acquired and abandoned by the written declarations of the parties; that no mortgage to secure a loan or indebtedness was valid except a mortgage to secure the purchase money, and the latter must be signed and acknowledged by the wife. Under the Act of 1851 a mortgage of the homestead to secure a loan was valid if executed and acknowledged by the wife, but under the Act of 1860 it was declared invalid.

The Act of 1862 (Stats. 1862, p. 519) amended the second section of the Act of 1860 in several particulars. It is provided that " such exemption [from forced sale on execution or other final process] shall not extend to any mechanic's, laborer's or vendor's lien lawfully obtained, nor to any mortgage or other lien lawfully taken or acquired to secure the purchase money for said homestead." The term " mortgage or other lien " was intended to embrace every possible form or character of security for the purchase money that might

35

become a charge upon the premises, except, perhaps, the vendor's lien.

The next clause of the section is that " no alienation, sale, conveyance, mortgage or other lien of or upon the homestead property shall be valid or effectual for any purpose whatever, unless the same be executed by the owner thereof, and be executed and acknowledged by the wife, if the owner be married and the wife be a resident of this State, in the same manner as provided by law in case of the conveyance of her separate real property." The words " mortgage or other lien " mentioned in this clause are intended as descriptive of all other mortgages and liens than those enumerated in the first clause. If it is held to include a mortgage for the pur-chase money, and to declare that it must be executed by the husband and wife, then, by the same reasoning, it is neces-sary for them to execute a mechanic's, a laborer's and a vendor's lien. That involves an absurdity, if not an impossi-bility. The phrase " mortgage or other lien " most clearly is not limited to those made or given for the purchase money. There is no such qualification expressly annexed to it, and such a limitation is not indicated, even remotely, by the context. The terms " alienation, sale, conveyance, mortgage or other lien," are comprehensive enough to include most, if not all of the modes in which parties may by their own act convey, create a lien upon, or otherwise affect real estate ; and seem to have been inserted to confirm and conserve the right of voluntarily alienating or incumbering of the home-stead, but requiring the sale, lien, etc., to be made in writing, and in order to protect the wife of the owner, if the owner be a married man and his wife a resident of this State, to be signed and acknowledged by her. It will not be presumed that the Legislature intended to take away the right of the husband and wife to deal with the homestead in any of the accredited modes by which real estate is conveyed or may be affected ; and nothing short of the clearest and most unmis-takable terms will justify us in holding that so unnecessary and unusual a restraint upon alienation was intended.

The Act of 1860 went much further in this respect than that of 1851 or that of 1862, it being provided in section two, as already mentioned, that no mortgage or alienation of any kind, except for the purchase money, should be valid.   That provision was under trial for two years, and was found to work badly.   Parties continued, as they had formerly done, to borrow money and give mortgages on the homestead as security, and to sell portions of the homestead premises; and, to accomplish either of these purposes, the husband and wife were burdened with the useless expense of filing a declaration of abandonment, and then, immediately after the execution of the mortgage or conveyance, of filing a new declaration of homestead.   The Legislature of 1862, in order to save parties this inconvenience and useless expense, repealed the prohibitory clause just mentioned, and in its place enacted the second clause of the second section of the Act of 1862, which we have cited at length.   And to make assurance doubly sure, a third clause was added, declaring that " for the purpose of making or creating such alienation, sale, conveyance, mortgage or lien as aforesaid, it shall not be necessary that the declaration of abandonment of the homestead be executed, as herein provided for, nor that the homestead be actually abandoned."   Whether the term " mortgage or other lien " in the second clause includes the " mortgage or other lien " mentioned in the first clause, or not, the declaration of abandonment could not by any possibility be deemed necessary by any one in order to give effect to a mortgage for the purchase money, executed cotemporaneously with conveyance of the premises to the mortgagor, for the mortgage must .of necessity have priority over the homestead claim, for that could not be made until after the purchase was effected; and, if executed subsequently to the declaration of homestead, it would be held by any Court in which it might be foreclosed, upon the plainest principles of equity, to have priority over the homestead claim, unless the Court was prepared to hold that the Act was a legislative device to enable purchasers to swindle vendors.   The provi-

sion must be considered as having relation to other mortgages than those given for the purchase money.

Whether the phrase "mortgage or other lien" in the second clause includes the mortgage or other lien mentioned in the first clause, or not, it is clear that it comprises all mortgages other than those executed to secure the purchase money. The husband and wife, therefore, are not restrained by the Act from mortgaging the homestead to secure the payment of a loan.

It is urged, however, that the first clause of section two enumerates certain liens which may be enforced against the homestead by forced sale on execution or other final process; that, therefore, the enumeration is exclusive, and consequently non-enumerated liens are void. The point is more plausible than real. The error arises from a misinterpretation of the phrase "forced sale on execution or other final process." The effect of the qualifying word "forced" seems to be overlooked. The Constitution (Article XI, Section 15) provides that: "The Legislature shall protect by law, from forced sale, a certain portion of the homestead and other property of all heads of families." The several Homestead Acts were enacted to give effect to this provision. A "forced sale" is not synonymous with a "sale on execution," etc. The latter may be and often is voluntary in every respect. When the owner consents to a sale under the execution or other legal process, the sale is not forced, but it is as voluntary, within the full import of the term, as it is when he directly effects the sale and executes the conveyance. Its quality, as being voluntary or forced, depends not upon the mode of its execution, but upon the presence or absence of the consent of the owner. If those terms were synonymous or were so understood by the Legislature, the provision would have been that the homestead shall not be subject to sale under execution or other legal process. As the clause now stands, and with the interpretation contended for, no meaning or effect can be given to the word "forced." The meaning of a sale on execution or other final process is plain

and needs no interpretation, and the word "forced," unless it is to be rejected as insensible, must qualify the phrase with which it is connected. If it is rejected from the statute, it must have the same fate in the clause of the Constitution directing the enactment of the statute. But we think there can be no question that enforced sale means a sale against the will of the owner. It is apparent, upon reading the whole Act in connection with the constitutional provision, that it was not the intent either of the framers of the Constitution or of the Legislature to prevent the owner or owners of the homestead property from voluntarily alienating, changing or otherwise affecting it. The homestead was not forced upon him, but he was at liberty to avail himself of its protection or not, at his election, and if accepted to waive it at his election—the consent of his wife, if he was a married man, being required in order to secure to her, also, the protection of the homestead exemption.

We remarked that where the owner of the homestead consents to a sale under execution or other legal process, it is not a forced sale. It makes no difference in respect to its being forced or voluntary, whether he consents directly to the sale or does the same indirectly by consenting to or doing those acts or things that necessarily or usually eventuate in a sale. A foreclosure sale, whether under the power of sale contained in the mortgage or in pursuance of a decree, is not a forced sale within the meaning of the Constitution or the statute.

There are other views which we think decisive of this question. The statute of 1860 declared a mortgage of the homestead to secure a loan void. The clause containing this prohibition was repealed by the Act of 1862. This is tantamount to a declaration that such mortgage thereafter executed in conformity to law should be valid.

The statute of 1862, as we have already said, affirmed the power of the owner to mortgage the homestead for other purposes than to secure the purchase money. It would be doing violence to the plainest rules of statutory construction

to hold that the Legislature, while conserving to the owner the power to execute the mortgage, intended to deprive the mortgagee of the right of foreclosure and sale. It would be a misnomer to call such an instrument a *mortgage,* and a strange perversion of terms to say that it was *valid.* Concede to the owner of the homestead the power to give the mortgage, and the remedy for its enforcement by foreclosure and sale necessarily follow.

In conclusion, we do not think the Act, which might well have been improved by the omission of certain words and phrases—inserted apparently through excess of caution—is rendered so obscure as to leave in doubt the intent of the Legislature. The unnecessary mention of cases in which the property may be subjected to a forced sale—a vendor's lien, which necessarily attaches before the homestead claim is passable, and a mortgage or other lien to secure the purchase money, which is valid, in spite of the homestead—does not make a sale under legal process a forced sale, without regard to the presence or absence of consent of the homestead claimant.

The point that the complaint is defective because it is not alleged that the claim was presented to the administrator for allowance, must be disposed of on the authority of *Coleman* v. *Woodworth,* 28 Cal. 567. The objection should have been taken in the Court below.

Judgment reversed and cause remanded for further proceedings.

Mr. Justice SAWYER delivered a dissenting opinion.

By the Court, RHODES, J., on rehearing:

The judgment rendered herein by this Court is modified as follows:

Judgment reversed and cause remanded with directions to enter judgment for the plaintiff upon the findings of fact, that the amount of the note be paid by the administrator in

the due course of administration, in "American gold and silver coin," and that the mortgaged premises be sold as prayed in the complaint.

Neither Mr. Justice SHAFTER nor Mr. Justice SAWYER expressed an opinion.