P.I.E. EMPLOYEES FEDERAL CREDIT UNION, Plaintiff and Respondent,

v.

JoAnn BASS, an individual, Rex Paul Bass, an individual, Defendants and Appellants.

No. 19766.

Supreme Court of Utah.

June 2, 1988.

Rehearing Denied June 28, 1988.

Paul Franklin Farr, Bruce L. Richards, Mark A. Wolfert, Salt Lake City, for plaintiff and respondent.

Jon C. Heaton, James A. Boevers, Salt Lake City, for defendants and appellants.

STEWART, Justice:

JoAnn Bass appeals the trial court's denial of her motion for payment of her homestead exemption from amounts received by plaintiff, P.I.E. Employees Federal Credit Union (P.I.E.), from a foreclosure sale of her home. We affirm.

## I. FACTS

On October 19, 1979, while still married, Bass and her ex-husband, Rex Paul Bass, signed a promissory note in favor of P.I.E. which was secured by a nonpurchase money second mortgage on their home. Subse-

quent to their divorce in 1980, JoAnn Bass retained possession of the mortgaged property and continued to reside there with her two children. P.I.E. filed a complaint February 10, 1982, to foreclose the second mortgage because of defaults in the payments on the note. Bass then recorded a declaration of homestead on the property on March 29, 1982, pursuant to Utah Code Ann. § 78–23–4 (1987). On January 24, 1983, P.I.E. obtained a judgment, a decree of foreclosure, and an order of sale from the district court. The property was sold pursuant to the court's order for an amount in excess of Bass's homestead exemption. Prior to bringing this action and after the sale of the property, Bass's attorney sent two letters to P.I.E.'s attorney demanding payment of the homestead exemption in the amount of $11,000. P.I.E. denied having an obligation to remit money to Bass for her homestead exemption. The issue was submitted to the district court. Bass's motion asserting that under Utah Code Ann. § 78–23–3(2)(b) (1987),[1] her homestead exemption prevailed over P.I. E.'s mortgage lien and that no security interests, purchase money or otherwise, may be excluded from the debtor's homestead exemption provided in Article XXII, Section 1 of the Utah Constitution.

On appeal, Bass argues that to be constitutional under Article XXII, Section 1 of the Utah Constitution, § 78–23–3(2)(b) must be limited to purchase money liens. If the statute is so construed, then P.I.E.'s non-purchase money note and mortgage do not take priority over Bass's homestead exemption, and she is entitled to receive the amount of her homestead exemption from P.I.E.

P.I.E. asserts three alternative arguments in support of the trial court's ruling. The first is that nothing in Article XXII, Section 1 precludes the enforcement of voluntary encumbrances on the homestead because that section only exempts homestead property from "sale on execution" and a mortgage foreclosure is not a "sale on execution," as that term is used in the Constitution. Second, P.I.E. asserts that § 78–23–3(2)(b) creates a constitutionally valid exception to the homestead exemption for enforcement of nonpurchase money as well as purchase money security interests in property. And third, P.I.E. argues that if appellant is found to have a valid homestead exemption, she has waived it by voluntarily signing the note and second mortgage.

## II. CONSTITUTIONAL HOMESTEAD EXEMPTION

■ The common law recognized no homestead exemption. *Zuniga v. Evans,* 87 Utah 198, 218, 48 P.2d 513, 521 (1935); *Cook v. Higley,* 10 Utah 228, 37 P. 336 (1894). Consequently, homestead exemptions exist only by a legislative act. *Higley,* 10 Utah at 229, 37 P. at 336–37. The majority of states, either under constitutional provisions supplemented by statutes or solely by statutes, have some form of homestead exemption from execution or forced sale.

■ The general purpose of a homestead exemption is to protect citizens and their families from the miseries of destitution. *See, e.g., Panagopulos v. Manning,* 93 Utah 198, 203, 69 P.2d 614, 617 (1937); *Gammett v. Storrs,* 15 Utah 336, 340, 49 P. 642, 643 (1897); *Knudsen v. Hannberg,* 8

---

1. Utah Code Ann. § 78–23–3(1) and (2) provide:
 (1) A homestead consisting of property in this state shall be exempt in an amount not exceeding $8,000 in value for a head of family, $2,000 in value for a spouse, and $500 in value for each other dependent. A homestead may be claimed in either or both of the following:
 (a) one or more parcels of real property together with appurtenances and improvements;
 (b) a mobile home in which the claimant resides.

 (2) A homestead shall be exempt from judicial lien and from levy, execution or forced sale except upon the following obligations:
 (a) statutory liens for taxes and assessments on the property;
 (b) security interests in the property and judicial liens for debts created for the purchase price of such property; and
 (c) judicial liens obtained on debts created by failure to provide support or maintenance for dependent children.

Utah 203, 208, 30 P. 749, 751 (1892). Absent constitutional or statutory restrictions, the homestead may be mortgaged and subjected to sale through foreclosure proceedings. *United States Bldg. & Loan Ass'n v. Stevens*, 93 Mont. 11, 17, 17 P.2d 62, 65 (1932); 40 Am.Jur.2d *Homestead* § 115 (1968).

Article XXII, Section 1 of the Utah Constitution states:

> The Legislature shall provide by law, for the selection by each head of a family, an exemption of a homestead which may consist of one or more parcels of lands, together with the appurtenances and improvements thereon of the value of at least fifteen hundred dollars, from sale on execution.

The first issue we consider is whether the phrase "sale on execution," as used in Article XXII, Section 1, was intended by the framers of the Utah Constitution to encompass the judicial enforcement of consensual liens, such as the nonpurchase money mortgage securing the promissory note involved here.

### A. *Framer's Intent*

 When interpreting constitutional language, it is appropriate to look to extrinsic evidence of the framers' intent, *State v. Betensen*, 14 Utah 2d 121, 378 P.2d 669 (1963); *Gammon v. Federated Milk Producers Ass'n, Inc.*, 12 Utah 2d 189, 190, 364 P.2d 417, 418 (1961); *General Electric Co. v. Thrifty Sales*, 5 Utah 2d 326, 334, 301 P.2d 741, 746 (1956), including the record of debates during the constitutional convention. *American Fork City v. Crosgrove*, 701 P.2d 1069, 1072 (Utah 1985); *General Electric Co.*, 301 P.2d at 746; *Voker–Scrowcroft Lumber Co. v. Vance*, 32 Utah 74, 84, 88 P. 896, 899 (1907). Those debates indicate that the wording of the homestead provision was given careful consideration. The framers initially considered adopting verbatim the homestead article from the Michigan constitution. It read:

> Every homestead of not exceeding forty acres of land, and the dwelling house thereon, and the appurtenances to be se-

lected by the owner thereof, and not included in any town plat, city or village; or instead thereof, at the option of the owner, any lot in any city, village or recorded town plat, or such parts of lots as shall be equal thereto, and the dwelling house thereon, and its appurtenances, owned and occupied by any resident of the State, not exceeding in value fifteen hundred dollars, *shall be exempt from forced sale on execution, or any other final process from a court,* for any debt contracted after the adoption of this Constitution. *Such exemption shall not extend to any mortgage thereon, lawfully obtained;* but such mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same.

Mich. Const. of 1850, Art. 16, § 2 (emphasis added.)

Opposition to this proposal centered on three main issues. First, it was not as generous to large families as the then-existing Utah statute which allowed the head of the household $1,000, an additional $500 in value for his wife, and another $250 for every minor child. Second, Utah was considered unique in that many Utahns had small city lots with larger noncontiguous acreage outside the city, and the proposal did not take this into consideration. Third, the proposal was thought to be too specific for constitutional enactment. *See* 2 *Proceedings and Debates of the Constitutional Convention for the State of Utah*, 1769–1771 (1898) (hereinafter 2 *Proceedings*).

Several amendments to the Michigan provision were proposed to correct the first two problems, none of which was acceptable to the delegates. A Mr. Creer offered an entirely new provision for consideration based on the law in Wyoming, which read:

> A homestead, as provided by law, *shall be exempt from forced sale*, under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists, but no property shall be exempt from sale for taxes, or for the payment of obligations

contracted for the purchase of said premises, or for the erection of improvements thereon.

2 *Proceedings*, at 1772 (emphasis added). The Creer proposal was criticized because it "contemplate[d] matters that might properly be left to the Legislature" and was promptly rejected by the committee. *Id.* at 1773–74.

The proposal eventually adopted by the Convention was suggested by Mr. Varian and later amended at Mr. Richards' prompting to provide a minimum $1,500 exemption. The Varian–Richards proposal generated much discussion and was viewed by the delegates as a vehicle to secure permanently a minimum homestead exemption, while at the same time allowing future legislatures flexibility to modify the exemption amount and other details to accommodate current conditions. At the Convention, Mr. Varian stated:

> [W]hy should we undertake to fix these matters of detail for all time, or at least until the Constitution shall come to be amended? [This is a question] of public policy, depending from time to time upon the condition of the people and the necessities which exist.... That is to say, insist that there shall be the necessary exemptions for the protection of poor debtors, ... but leave that necessity to be determined from time to time by the Legislature, which is better enabled to pass upon the question ... than this Constitutional Convention.

2 *Proceedings*, at 1774–75. Mr. Varian also stated in response to delegate questions:

> Now, this constitutional provision simply guarantees that [the homestead exemption] ... shall never be obliterated. It must be maintained in some form or other. ... The Legislature, in dealing with this question, would regulate the whole subject with reference to the exemption and necessities of the case.... [J]ust as sure as you undertake now to cover the subject, you will ascertain that you have omitted something, when it is too late, or

conditions and necessities of your people may change.

*Id.* at 1781–82.

There was virtually no discussion at the Convention as to what significance, if any, should be attached to the use of the term "sale on execution" in the final wording instead of the "forced sale" or "forced sale on execution" terminology used in various other proposals.

The Utah statutes, prior to and during the constitutional convention, provided that enforcement of certain types of liens was outside the scope of the Article XXII, Section 1 homestead exemption. The *Compiled Laws of Utah*, § 3429(11) (1888), stated in pertinent part:

> No ... property mentioned in this section is exempt from execution issued upon a judgment recovered for its purchase price, or any portion thereof, or upon a judgment of foreclosure of a mortgage or a mechanics' or laborers' lien thereon, or exempt from sale for taxes.

Two comments made by Mr. Varian at the Convention support the conclusion that the delegates viewed the existing homestead statute as harmonious with Article XXII, Section 1 as adopted. Mr. Varian stated: "[A]s it stands now, with this provision in the Constitution, the existing law will be maintained until the Legislature shall modify or change it...." 2 *Proceedings*, at 1782. Mr. Varian also stated:

> [L]et me call the attention of the committee to the fact that we have, I presume, what is deemed to be a good exemption law. It has been on the statute book for a number of years. Under this Constitution it would be continued in force until changed by the Legislature.

*Id.* at 1781.

Moreover, if the 1888 statute was in conflict with the language of Article XXII, Section 1, the Legislature certainly had the opportunity in 1896, the first year following the Convention, to change the statute. However, the Legislature retained the pertinent language of the 1888 statute. *See Laws of the State of Utah*, ch. LXXI § 1 (1896).

Thus, both the framers of the Constitution, and the members of the first Legislature (many of whom were delegates to the Constitutional Convention) apparently did not intend the "sale on execution" language of Article XXII, Section 1 to apply to the sale of homestead property pursuant to a mortgage foreclosure. If the framers of the Utah Constitution had intended to exempt homesteads from all forced sales pursuant to a foreclosure of a mortgage or other lien, they failed to evidence that intention.

### B. *Scope*

However, if the framers did not intend all mortgage foreclosures to be subject to and within the scope of the constitutional homestead exemption, it is unclear why an exception for all mortgages from the exemption was provided for by statute. Apparently, the framers and the first legislators believed either (1) that Article XXII, Section 1 allowed the Legislature to create statutory exceptions to the homestead exemption, or (2) that the statute simply defined what types of liens did or did not fall under the term "sale on execution" used in Article XXII, Section 1.

This Court held in *Volker–Scowcroft Lumber Co. v. Vance*, 32 Utah 74, 85, 88 P. 896, 899 (1907), that because Article XXII, Section 1 does not itself provide for any exceptions to "sale on execution," the Legislature is not free to create statutory exceptions.[2] The Court stated, "[I]t is obvious that the constitutional provision exempts a homestead from execution sale without restriction, limitation, or exception of any kind." *Volker–Scowcroft*, 32 Utah at 84, 88 P. at 899. *Revised Statutes of Utah*, § 1156 (1898), allowed the enforcement of mechanic's liens against homestead property. The Court held that the enforcement of such liens was a statutory form of execution sale and an unconstitutional narrowing of Article XXII, Section 1. *Volker–Scowcroft*, 32 Utah at 81, 88 P. at 898.

However, the Court specifically distinguished the enforcement of a purely statutory lien from the enforcement of a consensual security interest. The Court construed Article XXII, Section 1 not to provide any restriction on voluntary encumbrances of the homestead and concluded that a lien on the homestead arising from a voluntary contract between the parties was outside the scope of the homestead exemption—impliedly because the nature of a sale of such mortgaged property would be a judicial sale not within the term "sale on execution." The Court stated:

> In the absence of an express contract creating it, the lien which a materialman or mechanic may become entitled to depends solely upon the statute for its existence. ... The decree ordering the property sold in satisfaction of the judgment obtained rests alone for its authority upon the statute, and not upon any contract made by the defendant, and hence the order of sale is clearly an execution sale within the meaning of the Constitution.

*Volker–Scowcroft*, 32 Utah at 83–84, 88 P. at 899.

Although the Legislature has no power to restrict, defeat, or in any way impair the homestead right given in Article XXII, Section 1, *Panagopulos v. Manning*, 93 Utah at 203, 69 P.2d at 617; *Utah Builders' Supply Co. v. Gardner*, 86 Utah 257, 259, 42 P.2d 989, 990 (1935), the Court in *Volker–Scowcroft* recognized that because Article XXII Section I is not self-executing, the Legislature is authorized to "provide remedies for the protection of the homestead rights created and secured by the Constitution, and [it] *may regulate the claim of the right so that its exact limits may be known and understood....*" *Volker–Scowcroft*, 32 Utah at 82, 88 P. at 898 (emphasis added).

Utah case law supports the proposition that the enforcement of consensual security interests is outside the scope of Article

---

2. Other courts have agreed that a legislature's power to create exceptions from a constitutional exemption is limited. *In re Vonhee*, 238 F. 422, 424 (W.D.Wash.1916); *Hodges v. Cooksey*, 33 Fla. 715, 733, 15 So. 549, 552 (1894); *Burrows v. Brooks*, 113 Mich. 307, 310, 71 N.W. 460, 461 (1897); *Tuttle v. Strout*, 7 Minn. 465, 466 (1862); *Donaldson v. Voltz*, 19 W.Va. 156, 159 (1881).

XXII, Section 1. In *Kimball v. Salisbury*, 17 Utah 381, 53 P. 1037 (1898), this Court considered the homestead statute found in Compiled Laws of Utah, § 3429(11) (1888), *amended by* Laws of the State of Utah, ch. LXXI (1896). The Court construed the term "sale on execution" in Article XXII, Section 1 narrowly. In discussing the purpose for the homestead statute, and by implication Article XXII, Section 1, the Court declared:

> The object of the statute was to foster families as factors and beneficiaries of society, and thus promote the general welfare, and secure their permanency, and protect their homesteads from *forced sale*, as far as could be done without injustice to others.

*Kimball*, 17 Utah at 391, 53 P. at 1039 (emphasis added). *See also Folsom v. Asper*, 25 Utah 299, 306, 71 P. 315, 317 (1903) (states have right to establish homestead and other exemptions from *forced sales on execution* ).

In an apparent attempt to distinguish the applicability of the homestead exemption as against secured obligations, the Court stated, "Under this statute, the head of the family ... has his home and lands set apart for a homestead for the benefit of himself and family, free from any *personal obligation* held by any creditor...." *Kimball*, 17 Utah at 391, 53 P. at 1039 (emphasis added).

As recently as 1978, this Court stated, relying on *Panagopulos*, "The purpose of the homestead exemption of Article XXII, Section 1 of the Utah Constitution is to protect 'the dependent and helpless' and to insure such persons shelter and support free from fear of *forced sale*." *Sanders v. Cassity*, 586 P.2d 423, 425 (Utah 1978) (emphasis added).

In this case, appellant argues that *Peterson v. Hornblower*, 33 Cal. 266 (1867), supports the conclusion that at the time of Utah's Constitutional Convention, a nonpurchase money mortgage foreclosure was considered to be a "sale on execution" subject to the reach of Article XXII, Section 1. We do not agree that *Hornblower* so holds. The court in *Hornblower* construed the homestead provision of the California Constitution, which exempted property from "forced sale" in relation to the homestead statute which exempted property from " 'forced sale on execution, *or other final process.*' " *Id.* at 276 (emphasis added). The issue was whether a nonpurchase money second mortgage could be foreclosed against the homestead property. The court distinguished "forced" from "voluntary" sales, holding that if the owner of a homestead *consents* (i.e., by giving a mortgage) to a sale under execution *or other legal process*, it is not a forced sale. *Id.* The court concluded that a foreclosure sale pursuant to a judicial decree is not a "forced sale," but a voluntary sale, and therefore the homestead exemption did not prohibit the enforcement of nonpurchase money mortgages. *Id.* at 277. The court did not specify, however, whether it considered the mortgage foreclosure an execution sale or a sale by "other legal process."

At least one court has concluded that *Hornblower* specifically did *not* equate a foreclosure sale with an execution sale. According to *Nevada Nat'l Leasing Co. v. Hereford*, 144 Cal.App.3d 622, 192 Cal. Rptr. 617 (1983), *Hornblower* "held that an execution *or* foreclosure sale of real property consented to by the owner was not a 'forced sale'...." *Id.* 192 Cal.Rptr. at 619 (emphasis added). Although *Hornblower* and most case law hold that a mortgage foreclosure is not a forced sale, this Court on at least one occasion has reached a different conclusion. In *Local Realty Co. v. Lindquist*, 96 Utah 297, 309, 85 P.2d 770, 775 (1938), the Court declared that there are three types of forced sales that are against the will of the debtor: (1) execution sales generally, (2) foreclosure sales, and (3) tax sales. However, *Lindquist* is distinguishable from *Hornblower* because *Lindquist* did not determine the nature of a foreclosure sale in the context of the constitutional provision.

There has been much confusion as to the meaning and interrelationship of the terms "execution," "execution sale," "sale on execution," "forced sale," "foreclosure sale," and "judicial sale," both at

common law and recently. Historically, "judicial sales" and "execution sales" were viewed as fairly distinct and separate concepts.[3] The difference in their nature was articulated by one commentator in 1878:

In making ordinary execution sales, simply by virtue of his office, the sheriff or marshall acts as a ministerial officer of the law—not as the organ of the court. ... His authority to sell rests on the law and on the writ, and does not, as in judicial sales, emanate from the court.

D. Rorer, *A Treatise on the Law of Judicial and Execution Sales*, § 590 (2d ed 1878) (hereinafter *Rorer*). Discussing the nature of judicial sales, *Rorer* observed, "Judicial sales ... occur only in proceedings wholly or partly *in rem*. In this respect they are widely contradistinguished from execution sales, at law, where the judgment is exclusively *in personam*, and wherein the sale is that of the officer and not that of the court." *Id.* at § 31 (footnotes omitted).[4] In discussing mortgage foreclosures, *Rorer* states:

Judicial sales, in proceedings partly *in rem* and partly *in personam*, are where the proceedings are of a mixed nature, being directly against the property and also, personal against the owner, as in proceedings to foreclose deeds of mortgage by judicial sale. In such cases, there is a proceeding *in rem* against the property, and at the same time personal process against the mortgagor to bring him as defendant into court....

Yet the sale is none the less a judicial sale, and the sale of the court.

*Id.* at §§ 53–54 (footnote omitted). *Rorer* makes clear his view that mortgage foreclosures are judicial sales, as is any sale "whenever a right or proceeding is enforced, by a sale made by a judicial order

or decree, under direction of the court as contradistinguished from sales on execution." *Id.* at § 29.

Nevertheless, the distinctions between a "judicial sale" and an "execution sale" are unclear, especially in a jurisdiction like Utah which does not require judicial confirmation of a foreclosure sale. *First Nat'l Bank v. Haymond*, 89 Utah 151, 157–58, 57 P.2d 1401, 1405 (1936). Moreover, recent Utah decisions do not seem to treat judicial and execution sales as mutually exclusive categories. Executions have been characterized as a form of judicial or forced sale, *Larsen v. Associates Fin. Serv. Co. Inc.*, 564 P.2d 1128, 1129 (Utah 1977); *Murdock v. Blake*, 26 Utah 2d 22, 29, 484 P.2d 164, 169 (1971), much like mortgage foreclosures. *Soffe v. Ridd*, 659 P.2d 1082, 1084 (Utah 1983).

The Utah statute authorizing mortgage foreclosures states:

There can be but one action for the recovery of any debt or the enforcement of any right secured solely by mortgage upon real estate which action must be in accordance with the provisions of the chapter. Judgment shall be given adjudging the amount due, ... and the sale of mortgaged property ... to satisfy said amount ... and directing the sheriff to proceed and sell the same according to the provisions of law relating to sales on execution, and a special execution or order of sale shall be issued for the purpose.

Utah Code Ann. § 78–37–1 (1987). This Court has held, however, that the reference in § 78–37–1 to provisions relating to sale on execution does not indicate that a foreclosure sale is the same in nature as an execution sale generally, although they are somewhat analogous. *Lindquist*, 96 Utah

---

3. *See Nat'l Reserve Life Ins. Co. v. Kemp*, 184 Kan. 648, 656, 339 P.2d 368, 375 (1959); *First National Bank v. Barons*, 109 Kan. 493, 495, 200 P. 297, 298 (1921); 50 C.J.S. *Judicial Sales* § 1 (1947). One early commentator recognized that some sales are not easily categorized. Special executions were seen at common law as "partly partaking of the nature of an execution at law and of an order of sale in chancery.... It may be *judicial* and it may be *ministerial,* as either feature predominates; and it may partake of the

qualities of each in some respects." D. Rorer, *A Treatise on the Law of Judicial and Execution Sales,* § 592 (2d ed. 1878).

4. A proceeding to foreclose upon a mortgage is considered an action *in rem* or *quasi in rem* under Utah law. *First Nat'l Credit Corp. v. Von Hake,* 511 F.Supp. 634, 639 (D.Utah 1981); *Boucofski v. Jacobsen,* 36 Utah 165, 178, 104 P. 117, 122 (1909).

at 301, 85 P.2d at 772. The reference "has merely procedural significance" and simply "directs that in making the sale under foreclosure proceedings the sheriff shall proceed in the same way as he does in making sales under executions generally." *Id.*

Accordingly, we hold that a mortgage foreclosure sale is not a "sale on execution" for purposes of Article XXII, Section 1 of the Utah Constitution.

### III. STATUTORY HOMESTEAD EXEMPTION

The present statute was adopted in 1981 as part of a comprehensive change in Utah's exemption laws.[5] This change was implemented by the passage of the Utah Exemption Act, which was modeled after the Uniform Exemption Act. Appellant insists that the phrase "for the purchase price of such property" modifies both "security interests" and "judicial liens." This construction is urged upon the Court for two reasons. First, the statute is ambiguous and therefore should be given a broad and liberal construction in favor of the homestead right in order to accomplish the remedial and beneficial purposes for which it was designed. Second, to interpret it otherwise would be to create an exception not provided in the Constitution.

It has always been the general policy of this and most other courts that homestead statutes should be liberally construed. However, this preference for liberal construction should not be used to protect debtors from the performance of "just obligations." *Zanone v. Sprague,* 16 Cal.App. 333, 337, 116 P. 989, 990 (1911). Moreover, homestead exemption statutes "must be construed and interpreted to give effect to the purposes and objects the framers of the Constitution and the Legislature had in mind in the enactments." *Panagopulos,* 93 Utah at 204–05, 69 P.2d at 618.

The statute which preceded Utah Code Ann. § 78–23–3(2) (1987) unquestionably excepted all lawful mortgages, whether for purchase money or not, from the homestead exemption, *see* Utah Code Ann. § 78–23–3 (1953), (repealed 1981), as has

every homestead statute ever enacted in Utah, including those in effect prior to statehood. Accordingly, we must decide whether the Legislature intended to effect such a radical departure from over one hundred years of statutory precedent. We conclude it did not.

 When the language of a particular provision of a statute is ambiguous, the Court may attempt, following principles of statutory construction, to ascertain the intention of the Legislature; but where there is no ambiguity the plain language of the statute must be taken as the expression of the Legislature's intent. *Miles v. Wells,* 22 Utah 55, 62, 61 P. 534, 536 (1900). "The best evidence of the true intent and purpose of the Legislature in enacting the Act is the plain language of the Act." *Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903, 906 (Utah 1984). In the present case, a literal reading of the statute, *i.e.,* "security interests in the property *and* judicial liens ..." (emphasis added), precludes appellant's construction without torturing the syntax of the provision.

This conclusion is in harmony with the only other case we have been able to find construing Utah Code Ann. § 78–23–3(2)(b) (1987). The court in *In re Williamson,* 43 B.R. 813 (Bankr.D.Utah 1984), held that the provision denominated two distinct exceptions and that the phrase "for the [sic] debts created for the purchase price of such property" modifies only the term "judicial liens" and does not modify the term "security interests." *Id.* at 829. The court further held, "[t]he term 'security interest' as used in the Utah statute, was meant to embrace any consensual security interest in the property by which the owner of said property voluntarily pledges that property as security for a debt regardless of the purpose of the debt." *Id.* We agree. We find no ambiguity in the statute or any indication that the Legislature intended to alter the long-standing law of this state. Therefore, we hold that Utah Code Ann. § 78–23–3(2)(b) (1987) is a legislative expression that enforcement of all consensual

---

**5.** See footnote 1.

security interests, whether they are the result either of purchase money or of non-purchase money obligations, is not within the scope of the homestead exemption as created by Article XXII, Section 1 of the Utah Constitution.

The owner of property should not be allowed to hold that property out as security for a debt, with the credit received very possibly contingent on that security interest, and then have the opportunity to cut off the security by claiming a homestead exemption. *See In re Williamson,* 43 B.R. at 829–30. The power to sell the homestead includes the power to mortgage it. S. Thompson, *A Treatise on Homestead and Exemption Laws,* § 456 (1878). As the court in *Hornblower* recognized: "Concede to the owner of the homestead the power to give the mortgage, and the remedy for its enforcement by foreclosure and sale necessarily follow[s]." *Hornblower,* 33 Cal. at 278. Furthermore, the policy of allowing a consensual security interest, including a nonpurchase money mortgage, to be enforced against the homestead makes sense in light of the history of the Utah homestead exemption.

We hold that Utah Code Ann. § 78–23–3(2)(b) (1987) is a constitutionally valid expression of the scope of the exemption of homestead property from "sale on execution" created by Article XXII, Section 1 of the Utah Constitution. Accordingly, all consensual security interests in land may be enforced against homestead property. Because we hold that Article XXII, Section 1 of the Utah Constitution and Utah Code Ann. § 78–23–3(2)(b) do not provide a homestead exemption from foreclosure sale, the issue of appellant's waiver of that exemption by signing the mortgage is not reached.

Affirmed.

HALL, C.J., and HOWE, Associate C.J., and DURHAM, and ZIMMERMAN, JJ., concur.